# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of Douglas Spates and   }
Vivian Spates   }
  }     Docket No. 127-6-02 Vtec
  }
  }

## Decision and Order

Appellants Douglas Spates and Vivian Spates appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Derby, denying their proposal to convert a portion of a vacant ground-floor commercial space to a residential apartment.

Appellants are represented by Robert R. Bent, Esq.; the Town of Derby is represented by Charles D. Hickey, Esq. Five interested parties entered their appearance in this appeal: Roland N. Roy, Donna St. Jean, W. Perry Hunt, Ralph Miko, and Sandra Chaplin. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant-Applicants own a building in the Village Commercial zoning district of Derby Line, located on Main Street (U.S. Route 5). Residential multi-family use is a conditional use in the district. The Zoning Bylaw states the objective of the district as follows: This district provides for residential use and neighborhood type commercial facilities in an area served by municipal services. § 206.3. That section notes that the minimum yard dimensions are inapplicable in the Village Commercial district of Derby Line, where this building is located.

Directly to the south and across a small street from Appellants' building is the U.S. Customs building. Directly to the north of Appellants' building, across a driveway, is another commercial building housing a hardware or general store and a pharmacy. A residential apartment is located above the pharmacy. Directly to the north of that building one road continues straight and moderately down hill to the nearby border crossing, while the wider Main Street curves around to around to the northeast past the opera house and into a neighborhood of larger single-family houses. Main Street has a speed limit of 25 or 30 miles per hour in front of the building. While large trucks use the border crossing, incoming trucks stopped at the border crossing must then accelerate uphill towards Appellants' building and do not develop a great deal of speed by the time they reach that location. Visibility for such trucks of the area in front of the building is somewhat blocked by the grade at that location. Trucks approaching the border must slow down at approximately Appellants' building.

Main Street is very wide in front of Appellants' building, with ample room for angled parking on both sides of the street. The few blocks from Appellants' building to the south constitute the

downtown center of Derby Line, characterized by ground level storefronts, some with residences above the retail spaces. Directly across Main Street are similar buildings, housing a printer and two vacant storefronts, both with residential apartments above the retail spaces. The old fire station is located behind these buildings. South of these buildings are a bank and a gas station. South of Appellants' building are the customs building, post office, village hall, and a church. In recent years it has been difficult to attract businesses to the downtown, and a downtown development committee was formed to carry out the community's effort to stem the conversion of viable commercial spaces to residential use, and to attract businesses to the downtown area. The committee is particularly interested in attracting a restaurant and a grocery store to the area.

Appellants' building appears to occupy[1] approximately two-thirds of its lot. Its front wooden porch abuts the sidewalk. A portion of the lot is located at the elevation of Main Street and the road or driveway to the south of the building, but in the rear, the lot contains a retaining wall and the remains of an old building foundation, and the yard slopes down a steep bank to the northwest. Another three-unit residential building had been located in the rear and had been taken down by Appellants to provide more parking for Appellants' building.

At present Appellants' building houses three retail commercial spaces on the ground floor, occupied by a laundromat, a hair salon, and a vacant space. The building now also houses nine residential apartment units, one of which, a one-bedroom unit, is located on the ground floor south side of the building, to the rear of the laundromat. The vacant commercial unit is 1800 square feet in size, in an L-shape, and has been vacant and offered for rent for approximately four years. Appellants propose to convert approximately 800 square feet of that space in the rear of the building to a two-bedroom residential apartment, and to continue to offer the 1000-square-foot balance of the commercial space, including the storefront, for rent for a commercial use. There is ample parking in front of the building for the commercial uses in the building.

Appellants propose six spaces for parallel parking in the southerly side yard of the building, seven parking spaces in the rear yard at the upper elevation (one of which, number 13, would be blocked by number 12), and two spaces in the rear yard at the lower elevation, accessed by the driveway to the north of the building, one of which, number 15, would be blocked by the other, number 14. All the proposed spaces measure 9 feet by 18 feet.

To approve the additional apartment, the Court must find that the proposal will not adversely affect any of the criteria for conditional use approval[2]. § 208.1. The parties do not dispute that the proposed use will not adversely affect the utilization of renewable energy resources (§ 208.1(E)), the capacity of existing or planned community facilities (§ 208.1(A)), or the volume of traffic on roads and highways in the vicinity. (§ 208.1(E)).

The proposal also will not adversely affect the character of the area involved. (§ 208.1(B)). The downtown area of Derby Line is a mixed use residential and commercial neighborhood, characterized by local neighborhood commercial services and affected by the proximity of the nearby border crossing and customs services. The characteristic appearance of the area is that of a small town main street, rather wider than usual, with storefront businesses at ground level and residential uses above them or in the rear of the buildings, interspersed with entirely commercial

or institutional buildings (such as the bank, the gas station, the customs building, the village hall, and the church) and tapering off to residential uses at both ends.

Members of the downtown development committee are understandably concerned that the loss of even a single storefront for potential commercial use could further reduce the viability of the ' downtown' area. While the conversion of a storefront space to residential use would adversely affect the character of the area, which is a main street of storefront businesses with residential units either above or behind the storefronts, Appellants' proposal does not propose to convert a storefront to residential use. It will keep the same number of storefronts and the same appearance of the building and the downtown area. Appellants simply propose to convert the rear portion of this unused commercial space to residential use. As both this 1,800 square foot space and two larger storefront spaces across the street have been vacant for some time, we cannot conclude that a reduction in the size of the available storefront space will make it less marketable. In fact, Appellants' laundromat and hair salon spaces are both smaller commercial spaces that are in commercial use, while the vacant commercial spaces across the street are larger. If the vacancies in existing commercial spaces are due to their being oversized for prospective commercial tenants, this reduction in size will make Appellants' space more rentable, rather than less so. We also note that because Appellants' proposal does not involve the loss of a viable storefront, its approval would not constitute any ' precedent' for approval of any other applicant' s proposal for conversion of storefronts to non-commercial use.

More importantly, if the downtown development committee wants to encourage certain commercial uses through the zoning regulations, it could provide special categories of preferred uses such as a café-restaurant or neighborhood grocery store. However, nothing in the zoning bylaw as now written gives a preference to commercial over residential use of existing space in this district, or prohibits or discourages the conversion of commercial storefronts to residential use. Nor is there a requirement of consistency with a municipal plan, as is found in some municipalities' zoning regulations. Beyond the zoning regulations, there may be grant or subsidy programs in the recently-passed downtown revitalization legislation. However, if those concerns are not written into a municipality' s zoning ordinance, they cannot be imposed as such on landowners.

With respect to the proposal' s compliance with the other provisions of the zoning bylaw, on the other hand, based on the evidence as presented by the Appellant-Applicants, the Court cannot formulate appropriate conditions to avoid an adverse effect of the proposal on the parking requirements[3] found in the bylaws in effect at the time of this application. (§ 208.1(D)). This is so despite the fact that that bylaw section, § 402.7A, clearly states that its requirements " are recommendations only" and that they may be changed by the ZBA, and hence this Court, in considering conditional use approval. In considering whether the parking requirements should be altered, the Court must be guided by the statement of intent in § 402.7A(2) that the " principal intent in regulating the design of parking areas is to ensure safe and effective traffic flow and the integrity of the access to a public roadway."

Appellant-Applicants' proposal does not show whether any ' handicap parking and access' is required by state or federal regulations, or whether the age of the building exempts this proposal from such requirements. § 402.7A(6).

Appellant-Applicants' proposal does not show the provision made for parking allocated to the commercial uses in the building. Table 402.7B1. As observed during the site visit, there appeared to be ample room for angled parking or head-on parking on the street in front of the building, but it is not shown or discussed or laid out in the application, and therefore the Court cannot analyze whether it is sufficient or what the primary hours of operation are for those uses. Appellant-Applicants' proposal does not show whether that on-street commercial parking is proposed to be shared by the residential uses as provided in § 402.7A(7).

Appellant-Applicants' proposal does not show how much room, if any, is available at the rear of the lot if the land shown as the top of the ' bank' in the rear yard were to be extended by the addition of fill, or if such a proposal would even be possible. Similarly, Appellant-Applicants' proposal does not show how much room, if any, is available at the rear of the lot if the land shown as the top of the ' bank' in the rear yard were to be further excavated so that more of the land would be available at the lower level, or whether a driveway could or should be built on a slope to connect the southerly proposed driveway with the northerly paved one. Although evidence was presented that there was ' ample room' over the bank behind parking spaces 7, 8 and 9 to accommodate snow storage, Appellant-Applicants' proposal does not show how the proposed spaces would be plowed clear of snow if parking spaces 7, 8 or 9 were occupied during the snow event. Appellant-Applicants' proposal does not show whether a snow plow could get in through the narrow south side driveway or could turn around in the rear if all parking spaces were occupied.

The parking that should be allocated to the residential uses is 20 spaces, under Table 402.7B1. It might very well be possible to approve a reduction in that number by a showing that, for example, certain specified small apartments would only have a single parking space allocated to them in their leases, or that a second space would be provided for certain apartments at a satellite location, for example, at the church, the village hall, the bank, the old fire station, or the gas station. It might serve the project better to provide sufficiently-sized spaces and aisles, by reducing the number of on-site spaces and providing additional spaces in available off-site parking. No such proposals were made, however, and no evidence was presented from which the Court could analyze that issue.

Further, the proposed parking is undersized in several ways. The parallel parking spaces (numbered 1 through 6) should be 20 feet long, rather than 18 feet long, to accommodate the parallel parking maneuver. § 402.7A(8). The aisle adjoining those parallel parking spaces should be 22 feet wide; but as proposed at its narrowest point it is only approximately 15 feet wide, and no evidence was presented as to whether the combination of a shorter parking space and a narrower aisle would be useable for the designated parking, especially in the winter. Moreover, parking spaces in which one car blocks another, such as numbers 12 and 13 and numbers 14 and 15, are not allowed under § 402.7A(2).

As these requirements are advisory only, it might be possible to reduce them based on an adequate engineering explanation of how the users of these spaces would be expected to park, extricate themselves, turn around, and exit the property adequately. However, no such explanation was provided in the evidence. It might be necessary to impose conditions such as

that all vehicles must turn around on site and exit the drive facing frontwards. However, based on the evidence presented, the proposal fails to meet conditional use criterion § 208.1(D).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' proposal for conditional use approval of the conversion of approximately 800 square feet of retail space to a two-bedroom apartment is DENIED. This denial is specifically without prejudice to Appellants' presenting a revised application to the ZBA showing the rear property boundaries, and proposing a revised parking proposal showing how it meets the parking requirements or proposing specific alterations in the parking requirements requested for the project, including the following: any proposed changes in the grading or elevation of any of the rear yard, the length of the parallel parking spaces, handicapped parking regulations, the proposed tandem use of spaces, the joint use of parking if proposed, between the commercial and the residential uses of this building or adjacent buildings, and/or the provision of supplementary parking for the residential users at a location either off-street or on-street within 800 feet.

Dated at Barre, Vermont, this 6th day of January, 2003.

_____

Merideth Wright
Environmental Judge

### Footnotes

[1]   The lot lines are not shown at the rear of the lot, and it is difficult to determine whether there is additional room on the lot down the embankment at the rear. If the lot is longer than shown on the site plan, the Canadian border may cut across the rear portion of the property.

[2]   Ordinarily, site plan approval is also required for all uses except single-and two-family dwellings and agricultural uses. §209, first paragraph. Site plan approval is the mechanism to address on-site circulation and parking, and to address the adequacy of traffic access on and off the site. However, the Derby zoning bylaw (§209, second paragraph) allows the Zoning Administrator to waive the requirement of site plan approval upon determining that the proposed use "will not affect the adequacy" of the site plan criteria: (1) traffic access, (2) circulation and parking, (3) landscaping and screening, and (4) utilization of renewable energy resources. If such a determination was made regarding this proposal, it was not appealed to the ZBA, and is not before the Court. In any event, the project did not go through site plan approval, and all that is before the Court in the present appeal is the conditional use application.

[3]   No other bylaws were argued to be affected.